So Ordered.

Signed this 5 day of December, 2025.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

SANJAY OM TEWARI,                                    Chapter 7
                                                     Case No. 25-10546-1-pgr
                        Debtor.

_____

APPEARANCES:

SANJAY OM TEWARI                                     PRO SE
*Debtor*

UNITED STATES TRUSTEE                                HARRISON E. STRAUSS, ESQ.
*Office of the U.S. Trustee*
Leo W. O'Brien Federal Building
11A Clinton Ave, Room 620
Albany, NY 12207

THE DRIBUSCH LAW FIRM                                CHRISTIAN H. DRIBUSCH, ESQ.
187 Wolf Road
Albany, NY 12205
*Attorney for Geeta Kohli*

### **DECISION AND ORDER DENYING MOTION TO DISMISS**

1. On May 13, 2025, Debtor filed for relief under Chapter 7 of the United States

   Bankruptcy Code. (Docket No. 1). Debtor is representing himself in this case.

1

2. On July 22, 2025, the United States Trustee filed a motion to dismiss for substantial abuse under 11 U.S.C. § 707(b) ("Motion to Dismiss"). (Docket No. 22).

3. According to the Motion to Dismiss, Debtor's initial Form 122A-1 (Docket No. 11) was improperly filled out and, in any event, his annual income exceeds the median household income for a household of his size. Thus, according to the United States Trustee, Debtor fails the Means Test and his case should be dismissed.

4. While Debtor did not file written opposition to the Motion to Dismiss, on September 29, 2025, he filed an Amended Form 122A-1 and a Form 122A-2. (Docket No. 39).

5. The Court held a hearing and heard oral argument on the Motion to Dismiss on October 16, 2025. Harrison Strauss, Esq. appeared on behalf of the United States Trustee; Debtor appeared *pro se* in opposition to the Motion; and Christian Dribusch, Esq. appeared on behalf of Geeta Kohli, Debtor's ex-spouse, in support of the Motion. Attorney Strauss indicated that Debtor's amended forms were still improperly filled out and that the arguments in his Motion to Dismiss remained the same.

6. The Court reserved decision.

7. The Court provided the Debtor with an opportunity to supplement his oral argument with a written response. (Docket No. 41). No response was filed.

### *Pro Se* Pleading Standard

8. *Pro se* debtors lack familiarity with the formalities of pleading requirements. *Daise v. Goord*, 109 F. App'x 452, 453 (2d Cir. 2004). As such, pleadings filed by *pro se* litigants are held to less stringent standards than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts "apply a more flexible standard," to *pro se* filings "to raise the strongest arguments that they suggest." *Daise*, 109 F. App'x at 453; *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

9. Because the Debtor is *pro se*, the Court will excuse his failure to file written opposition to the motion.

### Means Test

10. In 2005, Congress codified a "Means Test" to steer debtors away from Chapter 7 and into chapters that require payments to unsecured creditors through a plan. *In re Perelman*, 419 B.R. 168, 172 (Bankr. E.D.N.Y. 2009).

11. Thus, § 707(b) was amended to "provide[] a formula which calculates a debtor's average monthly disposable income over a 60 month period by deducting statutorily specified allowable expenses, secured debt payments and priority debt payments from current monthly income." *Id.*

12. If the debtor's disposable income exceeds the statutorily allowable expenses under §707(b)(2), a presumption of abuse arises, and the debtor fails the Means Test. *Id.*

13. Even if the presumption of abuse does not arise under § 707(b)(2)(A) or is rebutted under § 707(b)(2)(B), § 707(b)(3) directs the Court to consider whether the petition was filed in bad faith or whether the totality of circumstances of the debtor's financial situation demonstrates abuse.

14. Debtor's Amended form 122A-2 shows that Debtor has a Monthly Disposable Income of negative $41,588.00. (Docket No. 39).

15. The United States Trustee argues in his Motion to Dismiss that Debtor should not be permitted to deduct his domestic support obligations as a "special circumstance" because Debtor is not actually paying the full amount of those obligations. (Docket No. 22, at 4).

16. Additionally, the United States Trustee argues that the Debtor's domestic support obligations are "contingent" due to Debtor's pending appeal of the support order. *Id.*

17. While Debtor has claimed "special circumstances" on his Form 122A-2, his doing so is unnecessary as no presumption of abuse arises under § 707(b)(2).

18. Debtor lists his monthly income as $20,258, which has not been disputed. (Docket No. 39, at line 1).

19. Debtor lists expenses of: Food, clothing, and other items $300; Out-of-pocket health care allowance per person $70; Housing and utilities—Insurance and operating expenses $100; Housing and utilities—Mortgage or rent expenses $600; Public transportation expense $150; Taxes: $8,145; Court-ordered

payments[1] Child support $10,029.17;[2] Education $100; and Optional telephone and telephone services: $40. (*Id.* at lines 6 – 23).

20. Debtor's monthly expenses total $19,534.17 and have not been disputed.

21. After subtracting Debtor's expenses ($19,534.17) from his monthly income ($20,258.00), Debtor is left with $723.83 per month.

22. However, § 707(b)(2)(A)(iv) permits the Debtor to subtract his "expenses for payment of all priority claims."

23. Debtor lists the total amount of all past-due priority claims as $928,298.48. (*Id.* at line 35). It is not clear how Debtor arrived at this number. His Schedules list priority claims of only $178,513.70 for debts owed to the IRS and to his ex-spouse, which is the number that the Court will use in the Debtor's Means Test calculation.[3] (Docket No 11).

24. If the total amount of all past-due priority claims, $178,513.70, is divided by 60, as is required by § 707(b)(2)(A)(iv), the monthly expense for these priority debts is $2,975.23. This leaves Debtor with a negative monthly disposable income of $2,251.40 per month.

25. Congress chose to use the phrase "priority claim" and this Court presumes that Congress "says in statute what it means and means in a statute what it says."

---

[1] These are court ordered payments for child support that Debtor actually pays. Past due obligations are not listed in this section of the form, but are listed in a different place, on line 35.

[2] While Debtor has listed only $9,203 on line 19 of Form 122A-2, at the October 16, 2025 hearing, Debtor stated that he is paying over $13,000 per month in child support. For purposes of this motion, the Court used $10,029.17, which is the amount Debtor has been ordered to pay in child support (Docket No. 39, at 10), and is the amount that the United States Trustee indicates in his motion that Debtor is paying (Docket No. 22, ¶ 14).

[3] It is not disputed that Debtor "has not made a single payment towards basic monthly spousal support, nor has he consistently paid his 83% share of the critical child support add-on expenses for his three children." (Docket 22, ¶ 14).

*In re Perelman*, 419 B.R. 168, 174 (Bankr. E.D.N.Y. 2009) (citing and quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)).

26. The fact that the Debtor is not making payments is not relevant to the § 707(b)(2)(A) calculation – the debt remains a "priority claim." Section 707(b)(2)(A) specifically states that "priority claims" should be considered in this calculation. To be entitled to a priority claim, the claimant must necessarily be owed money.[4]

27. Additionally, the fact that the support order is under appellate review is also not material to the Means Test.

28. A "claim" is defined by the Bankruptcy Code as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A).

29. Because Debtor has a negative monthly disposable income on line 39(d), no presumption of abuse arises under § 707(b)(2) and Debtor need not demonstrate that special circumstances have arisen.

30. Allowing the Debtor to deduct his past-due priority expenses makes sense considering that one of the purposes of the Means Tests is to determine a

---

[4] A similar statutory construction is given to § 707(b)(2)(A)(iii). *See In re Perelman*, 419 B.R. 168, 174 (Bankr. E.D.N.Y. 2009) ("The plain language of § 707(b)(2)(A)(iii) allows a debtor to deduct the amount due under his contracts for secured debt, regardless of whether he intends to reaffirm or surrender the property.").

6

debtor's ability to repay unsecured creditors through a plan. A Chapter 13 plan must provide for full payment of all priority claims, unless the claimholder agrees to a different treatment. 11 U.S.C. § 1322(a)(2). If a debtor has no income remaining after deducting all priority claims (divided by 60 months) from his monthly income, he will not be able to confirm a feasible Chapter 13 plan.

### Special Circumstances

31. Pursuant to 11 U.S.C. § 707(b)(2), once a presumption of abuse has been established the Debtor has the burden of rebutting this presumption by demonstrating special circumstances such as a "serious medical condition or a call or order to active duty in the Armed Forces." 11 U.S.C. § 707(b)(2)(B)(I).

32. The Court will not address the United States Trustee's argument that Debtor has failed to rebut the presumption of abuse, as this Court finds that no presumption of abuse has arisen.

### Totality of the Circumstances

33. "Under the totality of the circumstances test of § 707(b)(3)(B), courts are permitted to look at the entirety of a debtor's financial situation to determine whether there has been an abuse of the provisions of Chapter 7." *In re Pentasuglia*, No. 24-60694-6-PGR, 2025 WL 2456019, at *2 (Bankr. N.D.N.Y. Aug. 26, 2025).

34. "[B]ankruptcy courts first consider the debtor's ability to repay his debts and then weigh other mitigating or aggravating factors." *Id.*

7

35. The Court finds that Debtor does not have an ability to repay his debts as they currently exist. While Debtor's income is undisputably high, so are his liabilities. Debtor's monthly income of $20,258[5] is insufficient to cover his debts, which include domestic support payments of $16,232.44 per month and other martial debts of over $900,000.

36. The United States Trustee also argues that if Debtor is successful on appeal, he will easily be able to pay back his unsecured creditors. While this may be true, there is no way of knowing whether and/or to what extent Debtor will be successful on appeal.

**Bad Faith**

37. "[F]or purposes of § 707(b)(3)(A), bad faith may be found to exist when it is determined that the filing of the case is inconsistent with the Bankruptcy Code or its policies thereunder, even though the filing may otherwise be lawful." *In re Campbell*, No. 11-70038-AST, 2012 WL 360031, at *5 (Bankr. E.D.N.Y. Feb. 1, 2012) (internal citation omitted).

38. Whether a petition was filed in bad faith is subjective, turning upon the particular facts of a case. *In re Reese*, 402 B.R. 43, 51 (Bankr. M.D. Fla. 2008).

39. Some factors courts consider when trying to determine whether a petition was filed in bad faith are: "eve of bankruptcy purchases; incomplete or false schedules; or by failing to cooperate with the bankruptcy trustee." *In re*

---

[5] It should be noted that at the October 16, 2025 hearing, counsel for Debtor's ex-spouse argued that Debtor's monthly income may be "substantially higher" than $20,258. However, the Court has no evidence of that his salary is more than what he claims. In fact, his payment advice statements show slightly lower income. (Docket No. 10).

*Campbell*, No. 11-70038-AST, 2012 WL 360031, at *5 (Bankr. E.D.N.Y. Feb. 1, 2012).

40. Courts have also considered: "(1) excessive or lavish spending, both pre and post-petition; or (2) intentional concealment of assets or misrepresentation about the debtor's financial affairs; or (3) lack of effort to seek a nonbankruptcy solution to their problems coupled with (4) continuing ability to pay creditors." *In re Hibbard*, 448 B.R. 296, 301 (Bankr. S.D. Ga. 2009).

41. "The movant bears the burden of proving abuse under § 707(b)(3)(A) and (B) by a preponderance of the evidence." *In re Campbell*, No. 11-70038-AST, 2012 WL 360031, at *4 (Bankr. E.D.N.Y. Feb. 1, 2012).

42. The United States Trustee argues that the majority of Debtor's debt is either non-dischargeable tax obligations, domestic support obligations, and other potentially non-dischargeable marital debt. The United States Trustee also argues that the Debtor's other debts will be easily repayable if he is successful on appeal.

43. Without more, this is not enough to establish a bad faith filing.[6] Debtor's total assets are worth approximately $195,548 while his debts are over $2.5 million.

---

[6] Counsel for Debtor's ex-spouse argued at the October 16, 2025 hearing that there may be additional reasons for Debtor's case to be dismissed, namely that the facts of this filing are similar to the facts of *In re Grasso*. No. 25-10548 (PGR), 2025 WL 2827765, at *1 (Bankr. N.D.N.Y. Oct. 3, 2025) (dismissing a Chapter 11 case based on bad faith where debtor had only one major creditor, minimal insider unsecured creditors, and was using the automatic stay as a litigation tactic to gain advantage in a state court proceeding). However, Debtor has not had notice and an opportunity to respond to these allegations so the Court makes no determination on whether the case should be dismissed on grounds other than those raised in the United States Trustee's Motion, which is denied for the reasons stated above without prejudice to the United States Trustee or other proper party bringing a motion on notice raising those issues.

While it is true that most of the debt listed will probably not be discharged in this case, it is not clear how much of his debt can be discharged.

The United States Trustee's Motion to Dismiss (Docket No. 22) is DENIED.

###